HARISON *et al. vs.* JONES, trustee.

When an estate is limited in ultimate remainder to the right heirs by blood of the wife (first tenant for life), though not to take effect in possession until the death of the husband (second tenant for life), the persons contemplated to take in remainder are those kindred of the wife who according to the laws of inheritance would take by descent at her death, not such as would take at the death of the husband if the wife had survived until that time. In other words, the heirs of the first tenant for life are to be ascertained at her death, and not at the death of the second tenant for life.

April 8, 1889.

Title. Estates. Remainders. Words and phrases. Before Judge ADAMS. Chatham superior court. June term, 1888.

On June 28, 1842, a marriage settlement was executed by Sarah Fenwick Jones of the first part, Robt. H. Gardiner, Jr., of the second part, and Geo. Jones and Geo. J. Kollock of the third part, conveying the property of Sarah Fenwick Jones (describing it) to Geo. Jones and Geo. J. Kollock, " and the survivor of them, his heirs, executors, administrators or assigns," upon the following trusts :

" To and for the sole and separate use of the said Sarah Fenwick Jones for and during the term of her natural life; neither the said property herein and hereby conveyed, nor the rents, issues and profits thereof, to be in any manner or wise liable for or subject to the debts or contracts of the said Robert Hallowell Gardiner; and from and immediately after the death of the said Sarah Fenwick Jones, then in trust, as follows, to wit: the one moiety or half-part thereof in trust to and for the sole and separate use of the said Robert Hallowell Gar-

diner, Jr., if he should survive the said Sarah Fenwick Jones, for and during the term of his natural life; the other moiety or half-part thereof in trust for such child or children as the said Sarah Fenwick Jones shall leave living at the time of her death, him, her or them, his, her or their heirs forever, if more than one, share and share alike, as tenants in common and not as joint tenants. And in the event of the death of the said Sarah Fenwick Jones without leaving a child or children living at the time of her death, or the descendant of such child or children, (it being intended that the issue of any deceased child of said Sarah F. Jones shall stand in the place of their deceased parent, and take the share of the estate of the said Sarah F. Jones to which their parent would have been entitled if alive,) and in case the said Robert Hallowell Gardiner, Jr., should then be living, then and in that case the said last mentioned moiety or half-part in further trust to and for the sole and separate use of the said Robert Hallowell Gardiner, Jr., for and during the term of his natural life, as aforesaid, and in the event of the death of said Robert Hallowell Gardiner, Jr., during the lifetime of the said Sarah F. Jones, or after her decease during the lifetime of any such child or children of the said Sarah Fenwick Jones, or the descendant or descendants of them or any of them, then and in that case the whole of the property and estate hereby conveyed in trust, to be holden in trust as aforesaid for the sole and separate use of the said child or children or their descendant or descendants, him, her or them, his, her or their heirs forever, as tenants in common, as aforesaid; or if the said child or children of the said Sarah Fenwick Jones should all die before they attain the age of twenty-one years, or without lawful issue living at the time of his or their death, then and in that case, upon the death of the said Robert Hallowell Gardiner, Jr., in further trust for the right heirs by blood of the said Sarah F. Jones, their heirs, executors, administrators or assigns forever.

The deed further provided for the sale of any of the property and reinvestment of the proceeds by the trustees, upon request of Sarah Fenwick Jones; etc.

On May 15, 1888, William Harison, Jr., Richard Morley Harison, and Noble W. Harison filed their petition for account, discovery, etc., from which appears the following: Mrs. Gardiner died in 1869 without issue living at her death, and leaving, as her only right heirs by blood, her sister Mary G. Harison, the mother of petitioners, and a brother, George N. Jones. Mary G. Harison died October 25, 1875; George N. Jones

died in 1878, leaving as his sole heirs Wallace S. Jones, Noble Jones (who has since died without having been married) and Sarah Jones, these three being his children, and the following grandchildren : Josephine Jones, Mary S. Jones and Noble Jones ; all minors, whose father died before their grandfather. Upon the death of George N. Jones, who was one of the trustees under the marriage settlement, Wallace S. Jones was substituted in place of the original trustees by proper proceedings. During the coverture of Mr. and Mrs. Gardiner, the property set forth in the marriage settlement was sold and the proceeds reinvested in other property, which is now in the hands of Wallace S. Jones as trustee. Mr. Gardiner died September 12, 1886, and at that time petitioners and the living descendants of George N. Jones were the only right heirs by blood of Mrs. Gardiner, and entitled, under the marriage settlement, to her estate, one moiety belonging to the descendants of George N. Jones and the other to petitioners, who have applied to the trustee to turn over to them their share, but he fails to do so. Among the others, is a prayer that the descendants of George N. Jones be made parties to this petition and show what are their rights.

Wallace S. Jones, trustee, Sarah Jones, and three minor defendants, Josephine, Mary S. and Noble Jones, (by their guardian *ad litem*) pleaded that the right heirs by blood of Mrs. Gardiner at her death were her brother, George N. Jones, and her sister, Mary G. Harison, who survived her ; that both George N. Jones and Mary G. Harison died testate, and their wills have been admitted to probate and record, defendant Wallace S. Jones being the sole surviving executor of George N. Jones, and Wm. H. Harison, Sr., being the executor of Mary G. Harison ; and that these executors ought to be

Harison *et al. vs.* Jones, trustee.

made parties to this bill, the former as a defendant and the latter as a plaintiff. There was also a demurrer on the grounds that it appears from the bill that it is necessary that the estates of Mary G. Harison and George N. Jones should be represented in this suit, but no legal representative of either is made a party thereto; also that the plaintiffs are improperly joined as parties, and that Sarah Jones, Josephine Jones, Mary S. Jones and Noble Jones are improperly joined as defendants.

The court sustained the demurrer, holding that, upon the death of Mrs. Gardiner, her brother and sister, Geo. N. Jones and Mary G. Harison, who were then her right heirs by blood, took a vested remainder interest in the estate, and that the fee is now in their legal representatives. The plaintiffs excepted.

W. W. MONTGOMERY, by brief, for plaintiffs.

J. R. SAUSSY, for defendants.

BLECKLEY, Chief Justice.

The instrument presented for our construction is an ante-nuptial settlement in trust, executed in 1842. The conveyance embraced both realty and personalty, but realty alone is involved in the present controversy. The literal terms of the instrument appear in the official report. So far as now material, the trusts created were substantially as follows: First, for the separate use of the wife during her life; secondly, then for the use of the husband during his life; thirdly, then for the use of the children, if any, in fee; and fourthly, if no children, then and in that case, upon his death, for the use of her right heirs by blood, forever. She, having had no child, died in 1869. He died in 1886. At the time of her death, her right heirs by blood were a brother and a sister, both of whom died before he died, and both

Harison *et al. vs.* Jones, trustee.

left children, some of them (the plaintiffs in error) sur-
viving when he died.    The sole question for decision is,
whether these children or their parents were her " right
heirs by blood," within the meaning and legal effect of
the settlement.

The general rule undoubtedly is, that heirs are those
persons upon whom a descendible estate is cast by law,
upon 'the owner's death.    It must follow that " right
heirs by blood" are such and so many of the heirs gen-
eral as would, by reason of blood, participate in such an
estate were it so cast.    All collateral inheritance is by
reason of blood only.    Brother and sister are collaterals;
so are nephew and niece.    It is not disputed that the
former two are nearer in degree than the latter two.
We can see nothing in the settlement to indicate that
the heirs are to be looked for at the death of the hus-
band, rather than at the death of the wife.    As soon as
those in whom the ultimate remainder was to vest
were ascertained, that remainder vested ; and these per-
sons were ascertained when the wife died, for then it
became known with absolute certainty who were her
" right heirs by blood."    They did not, by dying, cease
to be such heirs and admit a new set, but died without
leaving any vacancy in the character, or any room for
substitution.;    Whatsoever their children acquired of
the property embraced in this settlement came *through*
them, and did not come over their heads or under their
feet.    If the children claim by descent, the *propositus*,
as to them, is their parent, not their aunt; and if they
claim by purchase, their title is the parent's will, not
the settlement.    Here the nephews and nieces are not,
and never have been, the heirs of their aunt.    Her heirs
by blood were her brother and sister, and she has not
had, and never can have, any other heirs by blood.    In-
deed, as she left a husband, who according to our statute,

Harison *et al. vs.* Jones, trustee.

there being no children, was her sole heir at law, even the brother and sister were not heirs, but only the persons who would have been heirs had blood alone been regarded. The designation, by the word " heirs," of persons who were not heirs, was intended as a description of a class of persons, and though not accurate, is perfectly intelligible, the meaning being such of the wife's kindred as by the laws of inheritance would be her heirs were the husband already dead when she herself died. The intent was to exclude the husband as heir at law of the wife, and to substitute her next of kin at the time of her death ; and this intent was to prevail whether he survived her or not. The settlement, as we have said, contains no words indicating that the right heirs of the wife by blood were to be sought for at the death of the husband rather than at her own death. This being so, the general rule obtains. Denvers *vs.* Clarendon, 1 Vern. 35 ; Doe *ex dem.* Pilkington *vs.* Spratt, 5 B. & Ad. 731 ; Newkirk *vs.* Hawes, 5 Jones Eq. 265 ; Abbot *vs.* Bradstreet, 3 Allen, 587 ; Minot *vs.* Tappan, 122 Mass. 535 ; Dove *vs.* Torr, 128 Mass. 38; Hawkins on Wills, 94, 99, *et seq.;* Schoul. on Wills, §563. In *Haddock vs. Perham,* 70 *Ga.* 572, there was no dispute as to the persons filling the description of " heirs" of the testator (see page 575); and consequently there was no occasion to distinguish in that regard between any two groups or classes of persons. What was said upon the point was merely casual or incidental, and is, we think, to be treated as *obiter.*

We confine this opinion to the one question made in the briefs of counsel and above decided. The controlling effect of this question upon the main cause we understand as conceded.

Judgment affirmed.